```
         IN THE UNITED STATES DISTRICT COURT
        FOR THE SOUTHERN DISTRICT OF ALABAMA
                    NORTHERN DIVISION


WILLIAM GRICE, JR.,              :
                                 :
     Plaintiff,                  :
                                 :
vs.                              :     CIVIL ACTION 11-0650-M
                                 :
MICHAEL J. ASTRUE,               :
Commissioner of Social Security, :
                                 :
     Defendant.                  :
```

MEMORANDUM OPINION AND ORDER

In this action under 42 U.S.C. § 1383(c)(3), Plaintiff seeks judicial review of an adverse social security ruling which denied a claim for Supplemental Security Income (hereinafter *SSI*) (Docs. 1, 15). The parties filed written consent and this action has been referred to the undersigned Magistrate Judge to conduct all proceedings and order the entry of judgment in accordance with 28 U.S.C. § 636(c) and Fed.R.Civ.P. 73 (*see* Doc. 25). Oral argument was waived in this action (Doc. 24). Upon consideration of the administrative record and the memoranda of the parties, it is **ORDERED** that the decision of the Commissioner be **AFFIRMED** and that this action be **DISMISSED**.

This Court is not free to reweigh the evidence or

1

substitute its judgment for that of the Secretary of Health and Human Services, *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983), which must be supported by substantial evidence.  *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  The substantial evidence test requires "that the decision under review be supported by evidence sufficient to justify a reasoning mind in accepting it; it is more than a scintilla, but less than a preponderance."  *Brady v. Heckler*, 724 F.2d 914, 918 (11th Cir. 1984), *quoting Jones v. Schweiker*, 551 F.Supp. 205 (D. Md. 1982).

At the time of the administrative hearing, Plaintiff was fifty-one years old, had completed a high school education (Tr. 38)[1], and had previous work experience as an agricultural laborer (Tr. 30-32; *see* Tr. 20).  In claiming benefits, Plaintiff alleges disability due to degenerative disc disease, anxiety/depression, obesity, and hypertension (Doc. 16).

The Plaintiff filed a protective application for SSI on March 5, 2009 (Tr. 119-21; *see* Tr. 10).  Benefits were denied following a hearing by an Administrative Law Judge (ALJ) who determined that although he could not return to any of his past

---

[1]**Error! Main Document Only.**Grice testified that he had received a Graduate Equivalency Degree (Tr. 38).

relevant work, Grice was able to perform specified light jobs existing in the national economy (Tr. 10-22). Plaintiff requested review of the hearing decision (Tr. 116-17) by the Appeals Council, but it was denied (Tr. 1-6).

Plaintiff claims that the opinion of the ALJ is not supported by substantial evidence. Specifically, Grice alleges that: (1) The ALJ did not properly consider the medical evidence; and (2) the ALJ did not properly consider his obesity (Doc. 15). Defendant has responded to—and denies—these claims (Doc. 20). The relevant medical evidence of record follows.

On March 3, 2009, Plaintiff went to the Northport Medical Center and received a hemorrhoidectomy which was complicated by delirium tremens (Tr. 174-88). He was released, with no complications, after two nights with some Lortab[2] for pain with instructions not to engage in heavy lifting or strenuous activity.

On May 30, 2009, Dr. Raveendran Meleth examined Grice who appeared to be in discomfort; the doctor noted that Plaintiff walked slowly and had difficulty bending forward and removing his shoes and socks (Tr. 189-94). He also had trouble getting

---

[2]**Error! Main Document Only.***Lortab* is a semisynthetic narcotic analgesic used for "the relief of moderate to moderately severe pain." *Physician's Desk Reference* 2926-27 (52nd ed. 1998).

3

onto the examination table and lying flat; he could straight-raise his right leg to thirty degrees and his left leg ninety degrees with no evidence of sciatica.  The doctor noted that Grice was tremulous and that he had spasms in his back, right hip, and right knee; he had abnormal posture.  Grice had normal motor strength, bulk, and tone in all limbs except for his right lower limb which was limited due to pain and spasm.  Meleth's diagnosis was as follows:  (1) low back injury, lumbar strain, probably degenerative joint disease (hereinafter *DJD*); (2) neck pain due to myalgia; (3) left trapezius was tender; (4) anxiety; and (5) previous history of alcoholism.

X-rays of Plaintiff's lumbar spine, taken on July 7, 2009, revealed a slightly rotated RAL; vertebral body heights and posterior vertebral body alignment were within normal limits (Tr. 196).  Discogenic degenerative changes were present at the L4-L5 level; degenerative changes were also noted at the right sacroiliac joint.

A non-examining state physician, Dr. Richard Whitney, looking at the hemorrhoidectomy hospital admission, noted that Grice was wandering around the room with no evidence of leg problems (Tr. 199).  He characterized Dr. Meleth's examination as having a negative straight leg raise; he summarized the

4

lumbar spine x-rays as showing mild DJD.  Whitney concluded that there was no medical support for the limitations suggested by Dr. Meleth.

Records show that Plaintiff was seen on November 18, 2009 by Gordon M. Forward, DSW, LCSW, at the Cahaba Mental Center and was noted to be dysphoric, irritable, and easily distracted with constricted affect and adequate judgment/insight; he was diagnosed with major depressive disorder, recurrent, and alcohol dependency (Tr. 224-36).  A psychiatric assessment was done on March 25, 2010 during which Grice was noted to be oriented in three spheres; he was dysphoric with only fair insight and judgment (Tr. 227).  On May 3, Forward wrote the following summary of his treatment of Grice:

> William Grice is a client of the Cahaba Center for Mental Health.  He is now treated for an anxiety disorder of long standing, and several major disappointments in his life with which he was unable to cope.  This led to alcohol dependency.  He is now clean and has sober thinking.  However, he continues to be socially withdrawn, easily upset, cries a lot, stays away from people and is not able to develop give in [sic] take (working) relationships with others.  He is unable to hold gainful employment during the next twelve months and nor is he likely to be able to work at all in the future.

5

(Tr. 225).

On July 12, 2010, Dr. Chris Searcy noted that Plaintiff walked with a cane, in an irregular and halting gait, and was apparently in distress (Tr. 257-60).  Grice winced with palpation all along the spine, though it was worse in the lumbosacral area; there was tenderness over the right sacroiliac joint.  No abnormalities were noted in the extremities.  There was severe limitation in the right hip range of motion, with wincing with any movement; Plaintiff complained of pain with flexion of the right knee, though Searcy thought it was right-hip related.  The doctor's diagnostic impression was disability due to nearly incapacitating back pain, hypertension, and anxiety disorder.  Searcy completed a medical source statement in which he indicated that Grice was capable of sitting for one hour and standing/walking for less than one hour during an eight-hour day; Plaintiff was capable of lifting/carrying up to five pounds occasionally and one pound frequently (Tr. 259). The doctor indicated that Grice could also do the following: use his fingers for fine manipulation and grasping, twisting, and handling on an occasional basis; use arm and/or leg controls and operate a motor vehicle only rarely; but could never climb or balance, bend or stoop, reach or work around hazardous

6

machinery. Searcy also anticipated that Plaintiff's impairments would likely cause him to miss work more than three times a month. The doctor also completed a questionnaire in which he indicated that Grice's pain was profound and intractable, virtually incapacitating him and that physical activity would increase his pain to such an extent that he would have to take medication or go to bed (Tr. 260).

This concludes the medical evidence. The Court will move on to Plaintiff's claims.

Grice first claims that the ALJ did not properly consider the medical evidence. More specifically, he asserts the following three claims: (1) the ALJ erred in relying on the opinion of Dr. Whitney, a non-examining physician; (2) the ALJ erred in rejecting the opinion of Dr. Searcy, the only examining physician who provided a residual functional capacity (hereinafter *RFC*) assessment; and (3) the ALJ erred in rejecting the opinion of Mr. Forward, Grice's treating counselor (Doc. 15, pp. 2-6).

It is noted initially that "although the opinion of an examining physician is generally entitled to more weight than the opinion of a non-examining physician, the ALJ is free to reject the opinion of any physician when the evidence supports a

contrary conclusion." *Oldham v. Schweiker*, 660 F.2d 1078, 1084 (5th Cir. 1981);[3] *see also* 20 C.F.R. § 416.9527 (2012). The Court notes that the opinion of a nonexamining physician "is entitled to little weight and taken alone does not constitute substantial evidence to support an administrative decision." *Swindle v. Sullivan*, 914 F.2d 222, 226 n.3 (11th Cir. 1990) (citing *Broughton v. Heckler*, 776 F.2d 960, 962 (11th Cir. 1985).

Grice first argues that the ALJ erred in relying on the opinion of Dr. Whitney, a non-examining physician (Doc. 15, pp. 2-3). Plaintiff asserts that Whitney did not correctly summarize the medical report in Dr. Meleth's examination and that he mischaracterized the results of the spine x-rays taken on July 7, 2009 (*id.*; *see also* Tr. 199; *cf.* Tr. 189-94, 196).

The Court finds Grice correct in asserting that Whitney ignored examination results by Dr. Meleth. Specifically, the straight leg raising test was positive in both legs and was done with pain and tremors (Tr. 193); Whitney said that the test was negative (Tr. 199). Whitney also characterized the spine x-rays as showing only mild DJD (Tr. 199) while the report itself never used the word *mild* (Tr. 196). Plaintiff specifically argues

---

[3]The Eleventh Circuit, in the *en banc* decision *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981), adopted as precedent decisions of the former Fifth Circuit rendered prior to

that "[w]hile the ALJ did not claim to give any weight to Dr. Whitney's opinion, he did adopt Dr. Whitney's opinion by stating, 'his X-rays reveal only mild degenerative disc disease' (Tr. 20)" (Doc. 15, p. 3).

The Court notes that although the x-ray report does not use *mild* in its description, the report does not indicate that the impairment is of a severe nature either. The Court finds that the x-ray results could be fairly stated as mild. The Court finds that the ALJ's characterization of Grice's DJD as mild to be, at most, harmless error. The Court further finds that Dr. Whitney's incorrect summary of Dr. Meleth's findings does not render the ALJ's decision to be without substantial evidence to support it.

Plaintiff further asserts that the ALJ erred in rejecting the opinion of Dr. Searcy, the only examining physician who provided an RFC assessment (Doc. 15, pp. 3-4). The ALJ's decision not to credit Dr. Searcy's opinion is as follows:

> Dr. Searcy's physical assessment of the claimant is rejected. Dr. Searcy examined the claimant on only one occasion and it does not appear he had the benefit of any objective test. His Medical Source Statement was not founded on medical evidence but rather on the claimant's

---

October 1, 1981.

>
> allegations.  The only objective findings in the record report mild degenerative joint disease of the back and sciatic joint.  This is not disabling to the point found by Dr. Searcy.  Dr. Searcy also found that the claimant suffered severe pain, but examinations have shown the claimant to be alert, oriented and in no acute distress.  He was not taking any medication in March 2010 (Exhibit 10F).  He has denied pain in March 2009 (Exhibit 9F).  At the time Dr. Searcy examined the claimant in July 2010, his only pain medication was over-the-counter Tylenol.

(Tr. 20).  The Court cannot say that the ALJ's rejection of Dr. Searcy's RFC opinion is not supported by substantial evidence.  The ALJ is correct in noting that Dr. Searcy conducted no objective medical tests in reaching his opinion, lending support to the ALJ's conclusion that the opinion was based on Grice's own subjective complaints.  Furthermore, the ALJ correctly noted that Plaintiff was not on any pain medications which would indicate the severe limitations suggested by Searcy.  Finally, there is no other evidence in the record which indicates the restrictions placed by Dr. Searcy.  The Court has already addressed the ALJ's characterization of Grice's DJD as mild and found it to be harmless.

Plaintiff also asserts that the ALJ erred in rejecting the opinion of Mr. Forward, Grice's treating counselor (Doc. 15, pp.

5-6). Grice argues that although Forward was not a physician, his opinion as a counselor could be accepted as an "other source" under 20 C.F.R. § 416.913(d).[4]

In her decision, the ALJ gave Forward's opinion no weight, noting that he was a counselor instead of a doctor. The ALJ went on to state that "[h]is opinion is not supported by the record of evidence and is made with the assumption that the claimant had discontinued all substances; however, the claimant continued to drink beer as late at [sic] July 2010" (Tr. 20).

The Court notes that the ALJ did not reject Forward's opinion solely because he was not a physician. This is important because the Counselor's evidence could have been considered as evidence from another source. However, the ALJ was correct in basing her decision on the fact that there was no other medical evidence demonstrating that Grice's mental limitations would totally preclude him from working. Forward's own records demonstrate that Plaintiff was not taking any sort of medications. Also, the evidence shows that Grice was receiving treatment, at most, once a month; on the most recent

---

[4] "In addition to evidence from the acceptable medical sources . . . , we may also use evidence from other sources to show the severity of your impairment(s) and how it affects your ability to work. . . . Other sources include, but are not limited to (1) [m]edical sources not listed in paragraph (a) of this section (for example, nurse-practitioners, physicians' assistants, naturopaths, chiropractors,

11

examination date, the same date that Forward indicated that Plaintiff would be unable to sustain employment, Grice indicated that he was doing "pretty well" while Forward indicated that his GAF was 60[5] (Tr. 225-26).  This demonstrates that Forward's notes are not internally consistent.  Based on the medical evidence, the Court finds no error in the ALJ's rejection of Forward's opinion that Grice would not be able to work.

In summary, Plaintiff has raised three different claims as to why the ALJ's decision did not properly consider the evidence of record.  The Court finds no merit in those claims.

Grice's final claim is that the ALJ did not properly consider his obesity.  More specifically, Plaintiff asserts that his obesity was a factor that should have been considered in connection with his degenerative disc disease (Doc. 15, pp. 6-7).  In Social Security Ruling 02-1p, the Social Security Administration issued a ruling entitled *Evaluation of Obesity* which examines the analysis for determining the following: whether a person is obese (based on a formula known as the Body Mass Index); whether the obesity is a medically determinable

---

audiologists, and therapists)."

[5] "A GAF score between 51-60 indicates "moderate symptoms (*e.g.*, flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational or school functioning (*e.g.*, few friends, conflicts with peers or co-work)."  American Psychiatric Association, *Diagnostic and Statistical Manual of Mental*

impairment; and whether the obesity is severe. The latter determination is made by determining whether "it significantly limits an individual's physical or mental ability to do basic work activities." SSR 02-1p.

The Court notes that the ALJ found that Grice's obesity was a severe impairment (Tr. 12). In the determination, the ALJ noted that obesity often affected the ability to work before going on to state that Plaintiff's "obesity had been considered in this decision and is not found to be affect [sic] the claimant's functioning so as to disable him" (Tr. 19). While the ALJ has not shared her analysis in reaching this decision, the Court notes that Grice has failed to direct this Court's attention to any medical evidence suggesting that obesity limited his ability to work. The Court further notes that, in the ALJ's findings, she lists Plaintiff's impairments and goes on to state that he "does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 416.920(d), 416.925 and 416.926)" (Tr. 12). This specific language has been upheld by the Eleventh Circuit Court of Appeals as sufficient consideration of the effects of the

---

*Disorders*, 32 (4th ed. 1994).

combinations of a claimant's impairments.  *Jones v. Department of Health and Human Services*, 941 F.2d 1529, 1533 (11th Cir. 1991) (the claimant does not have "an impairment or combination of impairments listed in, or medically equal to one listed in Appendix 1, Subpart P, Regulations No. 4").  Grice's claim that the ALJ did not properly consider her obesity is without merit.

In summary, Plaintiff has raised two different claims.  Both of those claims are without merit.  Upon consideration of the entire record, the Court finds "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Perales*, 402 U.S. at 401.  Therefore, it is **ORDERED** that the Secretary's decision be **AFFIRMED**, *see Fortenberry v. Harris*, 612 F.2d 947, 950 (5th Cir. 1980),  and that this action be **DISMISSED**.  Judgment will be entered by separate Order.

DONE this 26th day of June, 2012.

s/BERT W. MILLING, JR.
UNITED STATES MAGISTRATE JUDGE